UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TIFFANY PARKER,

        Plaintiff,

    v.                                                      Civil Action No. 24-cv-1008 (TSC)

MURIEL BOWSER, et al.,

        Defendants.

## MEMORANDUM OPINION

Plaintiff Tiffany Markeha Parker brought this action after the death of her brother, Terrance Maurice Parker, on April 30, 2021, during an encounter with Metropolitan Police Department ("MPD") officers. Plaintiff alleges, among other things, that the officers used excessive and unjustified deadly force, lacked adequate training, and did not follow proper procedures. Before the court are Defendants' Motion to Dismiss the Complaint for failure to state a claim, ECF No. 22, and Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 30. For the reasons that follow, the court will GRANT Defendants' motion to dismiss and DENY without prejudice Plaintiff's motion for leave to amend.

## I.    BACKGROUND

On April 30, 2021, MPD officers responded to a domestic violence call at a residence in Southwest Washington, D.C. *See* Compl. ¶¶ 1, 19, ECF No. 1. During the ensuing encounter, Terrance Parker was shot and killed by one of the officers. *See id.* ¶ 9. The United States Attorney's Office investigated the incident and declined to bring federal criminal civil rights charges against the involved officers. *See U.S. Attorney's Office Concludes Investigation Into*

*Fatal Shooting in Southwest Washington*, U.S. Dep't of Justice, U.S. Attorney's Office for the District of Columbia, https://perma.cc/TE86-TTEV (last visited Mar. 3, 2026).  MPD also publicly released body-worn camera ("BWC") footage of the encounter, which depicts the decedent producing and brandishing a firearm before he was shot.  *See* Metropolitan Police Department, *Community Briefing: Terrance Parker*, YouTube (May 4, 2021), https://perma.cc/R2CP-WPHD ("BWC Footage").

In April 2024, Plaintiff filed a Complaint in her personal capacity as the decedent's sister, naming the District of Columbia, MPD, Mayor Muriel Bowser, and various MPD officers as defendants.  In July 2024, Plaintiff filed an Amended Complaint without leave of court seeking, among other things, to "add the language Estate of Terrance Parker" to the caption, ECF No. 7, which Defendants moved to strike on multiple grounds, *see* Defs.' Mot. to Strike, ECF No. 13.  In July 2024, Defendants moved to dismiss the Complaint, ECF No. 6, renewing that motion in April 2025 after multiple stays to give Plaintiff additional time to obtain counsel had expired, ECF No. 22.  In February 2025—nearly four years after the incident and ten months after this lawsuit was filed—Plaintiff was appointed personal representative of her brother's estate.  *See* Mot. to Amend at 3, ECF No. 30.

Plaintiff then filed five additional documents, attempting to amend her complaint.  *See* ECF Nos. 23, 25, 26, 27, 28.  The court denied those filings without prejudice and directed Plaintiff to consolidate her amendment request into a single motion accompanied by "a proposed second amended complaint with all requested changes or additions reflected in one document."  Min. Order (Apr. 18, 2025).  In May 2025, Plaintiff filed the pending motion for leave to file a Second Amended Complaint, which references "a proposed Second Amended Complaint . . . attached

hereto as Exhibit A" but attaches no such document.  Mot. to Amend at 1.

## II.    LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).   A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   While the court "must accept all of the factual allegations in the complaint as true," *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (cleaned up), it "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint," or "plaintiffs' legal conclusions," *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).   In deciding such a motion, "the court may consider documents attached to or incorporated by reference in the complaint," *Fox v. District of Columbia*, 924 F. Supp. 2d 264, 269 (D.D.C. 2013), as well as "documents in the public record of which the court may take judicial notice," *Harris v. Bowser*, 369 F. Supp. 3d 93, 99 (D.D.C. 2019).   Although *pro se* litigants are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.    ANALYSIS

### A.    Motion to Dismiss

#### 1.    *Statutory Standing*

While generally, "the right of action for an injury to the person is extinguished by the death of the party injured," *Michigan Cent. R. Co. v. Vreeland*, 227 U.S. 59, 67 (1913), under D.C. law,

the "'personal representative' of the estate may bring claims for wrongful death on behalf of the deceased's next of kin, as well as a survival action on behalf of the deceased's estate." *Henson v. W.H.H. Trice & Co.*, 466 F. Supp. 2d 187, 192 (D.D.C. 2006); *see* D.C. Code §§ 12–101, 16–2702; *Runyon v. D.C.*, 463 F.2d 1319, 1321 (D.C. Cir. 1972).  When Plaintiff filed her Complaint in April 2024, she proceeded in her personal capacity as the decedent's sister, not as the personal representative of the estate, and therefore lacked statutory standing to bring survival or wrongful-death claims.  *See Garza v. Trump*, 709 F. Supp. 3d 1, 5 (D.D.C. 2024); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (defining the "statutory standing" inquiry as whether the plaintiff "falls within the class of plaintiffs whom [the legislature] has authorized to sue").  In February 2025, Plaintiff was appointed as personal representative of her brother's estate and now moves to file an Amended Complaint in that capacity.  *See* Mot. to Amend at 1, 3.  For purposes of this opinion, the court assumes she is the proper plaintiff to bring her claims and analyzes other bases on which to dismiss her Complaint.

>    2.    *Wrongful Death, Assault, Battery, and Intentional Infliction of Emotional Distress ("IIED") Claims*

As an initial matter, Plaintiff's wrongful death, assault, and battery claims are time barred on the face of the Complaint.  In D.C., wrongful death actions must be brought within two years of the decedent's death.  *See* D.C. Code § 16-2702; *Casey v. McDonald's Corp.*, 880 F.3d 564, 571 (D.C. Cir. 2018).  "Claims of assault and battery are subject to a one-year statute of limitations in the District of Columbia, and while IIED claims normally have a three-year statute of limitations, when they are 'intertwined' with and completely based on claims which have a shorter statute of limitations, they are subject to that period."  *Thong v. Andre Chreky Salon*, 634 F. Supp. 2d 40, 43 (D.D.C. 2009); *see* D.C. Code § 12-301(4); *Rendall-Speranza v. Nassim*, 107 F.3d 913,

920 (D.C. Cir. 1997). Terrance Parker died in 2021, and therefore the limitations period expired in 2023 for Plaintiff's wrongful death claim and in 2022 for Plaintiff's assault and battery claims. The IIED claim rests entirely on the same conduct as the assault and battery claims—the use of force by MPD officers on April 30, 2021—and therefore the limitations period expired in 2022 for Plaintiff's IIED claim as well. As Plaintiff filed this action in 2024, dismissal with prejudice is appropriate as to these claims.

### 3.    *Municipal Liability*

Plaintiff's allegations are also insufficient to state a Section 1983 claim for municipal liability. To state such a claim, a plaintiff "must allege not only a violation of h[er] rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation." *Warren v. D.C.*, 353 F.3d 36, 38 (D.C. Cir. 2004); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). She "may allege a municipal policy or custom by pointing to (1) 'the explicit setting of a policy by the government that violates the Constitution,' (2) 'the action of a policy maker within the government,' (3) 'the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become "custom,"' or (4) 'the failure of the government to respond to a need (for example, training of employees) in such a manner as to show "deliberate indifference" to the risk that not addressing the need will result in constitutional violations.'" *Wells v. Hense*, 235 F. Supp. 3d 1, 11–12 (D.D.C. 2017) (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

Plaintiff's failure to identify which theory of municipal liability she pursues is itself grounds for dismissal. *See Givens v. Bowser*, 2024 WL 3659343, at *3 (D.C. Cir. Aug. 6, 2024); *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015). And even construing the Complaint

broadly, it does not include sufficient non-conclusory allegations under any available theory.  The Complaint neither points to an explicit unconstitutional policy nor provides "'concentrated, fully packed, precisely detailed scenarios' as proof that an unconstitutional policy or custom exists." *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. D.C.*, 850 F.2d 708, 712 (D.C. Cir. 1988)).  And while Plaintiff alleges that the officer who fatally shot Parker "was not fully trained," Compl. ¶ 3, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  Plaintiff also fails to identify "a final municipal policymaker" who "made the decision that caused the violation." *Blue*, 811 F.3d at 20.  While the Complaint names former MPD Police Chief Robert Contee as a defendant, it only mentions him in connection with the public release of certain photos, with no explanation for why that release was unconstitutional or otherwise unlawful.  *See* Compl. ¶ 8. Passing references to "policy and procedures" and "protocol" do not suffice; Plaintiff must allege specific, non-conclusory allegations supporting each required element under a particular theory of municipal liability.  *Id.* ¶¶ 1, 8; *see Iqbal*, 556 U.S. at 678.

    4.  *Claims against MPD and Mayor Bowser*

  "Although plaintiff has named the MPD as a defendant, it is well settled that the MPD is *non sui juris* and, therefore, cannot sue or be sued."  *Heenan v. Leo*, 525 F. Supp. 2d 110, 112 (D.D.C. 2007).  As a subordinate entity of the District of Columbia, D.C. Code §§ 1–610.51(b), 5-105.01(a-1)(1), MPD is "prohibited from . . . being sued in [its] own name absent a statutory provision to that effect," *Art & Drama Therapy Inst., Inc. v. D.C.*, 110 F. Supp. 3d 162, 170 (D.D.C. 2015).  Similarly, Plaintiff's "official-capacity claims against the Mayor are redundant

and will be dismissed." *Perez v. D.C. Dep't of Emp. Servs.*, 305 F. Supp. 3d 51, 56 (D.D.C. 2018); *see Atchinson v. D.C.*, 73 F.3d 418, 424 (D.C. Cir. 1996) ("A section 1983 suit for damages against municipal officials in their official capacities is . . . equivalent to a suit against the municipality itself"); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) ("There is no longer a need to bring official-capacity actions against local government officials.").[1]

      *5.*        *Excessive Force Claim Against Individual Officers*

Plaintiff fails to allege a plausible excessive force claim against the individual officers. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (citation omitted). A right is clearly established when it "'squarely governs' the specific facts at issue," *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)), and is "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority,"'" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). This is a demanding standard. "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63. In evaluating the reasonableness of an officer's conduct, the court must adopt "the perspective of a reasonable officer on the scene"—keeping in mind the need to

---

[1] Any individual-capacity claim against Mayor Bowser also fails. The Complaint contains no allegations "that the Mayor was directly responsible for the constitutional deprivation" or "gave authorization or approval of such misconduct." *Ekwem v. Fenty*, 666 F. Supp. 2d 71, 76 (D.D.C. 2009) (citation omitted). The Complaint's only reference to the Mayor is that she "did not follow protocol because the MPD immediately released photos of the gun to the public." Compl. ¶ 8. As explained above, there is no evidence the Mayor was either "directly responsible" or gave the necessary authorization, much less that the release of photos violated constitutional rights.

make split-second judgments about the appropriate degree of force in tense and uncertain situations—not "the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Because qualified immunity is "immunity from suit," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (cleaned up).

It is black-letter law that the use of deadly force is reasonable where an officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "[D]eadly force may be used if necessary . . . and if, where feasible, some warning has been given." *Id.* at 11–12. "When the chaotic nature of the situation and an immediate threat to the safety of one or more individuals justifies deadly force, it may often be infeasible to give a warning and wait for it to be heeded (or not)." *Bushrod v. District of Columbia*, 521 F. Supp. 3d 1, 24 (D.D.C. 2021).

The Complaint's primary argument appears to be that the officers' use of deadly force was not reasonable because they "escalat[ed] to gun fire before any warnings or without requesting that [he] place his hands in clear view." Compl. ¶ 12. Plaintiff claims the decedent "appeared to be calm and non-threatening" and yet "the officers did not communicate any orders . . . before shooting [him]." *Id.* ¶ 5. The BWC footage released by MPD and incorporated by reference in the Complaint indeed depicts the decedent initially leaning on a mattress holding a cell phone. BWC Footage at 2:12–2:25. But as the officers approached him in the confined residential space, asking, "what do you got there," *id.* at 2:26–2:27, the decedent pulled out a handgun from his right

side, *id.* at 2:28–2:29.[2]  As the decedent raised and angled the gun, the officers drew their service weapons, and appear to have repeatedly yelled "gun" before opening fire.  *Id.* at 2:29–2:36.  The interaction—which lasted under a minute—was tense and chaotic.  "Under these circumstances, a reasonable officer could conclude that delaying action by issuing a warning would pose too great a risk to others' safety."  *Est. of Wilson v. D.C.*, 2024 WL 4370850, at *3 (D.D.C. Sept. 29, 2024); *see, e.g.*, *Leach v. D.C.*, 2022 WL 1316436, at *7 (D.D.C. May 3, 2022) (holding qualified immunity applied when officers used lethal force against "suspect in a small enclosed space" who "refused to show them what he was holding, did not respond to their commands, and did not drop the gun when ordered to do so").

**B.    Motion for Leave to File a Second Amended Complaint**

Rule 15(a)(2) provides that a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  While "the court should freely give leave to amend when justice so requires, a plaintiff must still comply with the law of

---

[2] Plaintiff asserts that the decedent "had a cell phone in his hand when he was fatally shot and any gun was found elsewhere in the room," and that "the video tape . . . was edited."  Compl. ¶¶ 1, 7.  But "when the bare allegations of the complaint conflict with any exhibits or documents, whether attached or adopted by reference, the exhibits or documents prevail."  *Davis v. World Savings Bank, FSB*, 806 F. Supp. 2d 159, 172 (D.D.C. 2011); *see Garcia v. Does*, 779 F.3d 84, 88 (2d Cir. 2015) ("[W]e take as true the facts set forth in the Complaint, to the extent that they are not contradicted by the video evidence."); *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (explaining that the court may only draw "inferences in favor of the nonmoving party *to the extent supportable by the record*").

this circuit by filing a motion for leave to amend his complaint and attaching a proposed amended complaint." *Dickens v. D.C.*, 2025 WL 885124, at *4 (D.D.C. Mar. 21, 2025).

Plaintiff's motion fails at the threshold, as she has not attached a proposed amended complaint. The court's April 18, 2025 Minute Order unambiguously required that any motion for leave to amend "be accompanied by a proposed second amended complaint with all requested changes or additions reflected in one document." *See* Min. Order (Apr. 18, 2025). In addition, Local Civil Rules 7(i) and 15.1 require a copy of the proposed amended pleading as an exhibit. *See* LCvR 7(i), 15.1. Plaintiff was advised of her obligations under the Local Rules at the outset of this case, *see* ECF No. 4, and the court denied Plaintiff's previous motion for leave to amend on this precise ground, *see* Min. Order (Sept. 11, 2024). Under these circumstances, Plaintiff's repeated failure to attach a proposed pleading, despite ample notice of the requirement to do so, is sufficient grounds on which to deny her motion. *See Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130–31 (D.C. Cir. 2012) (holding district court did not abuse its discretion in denying leave to amend when Plaintiff failed to include a proposed amended complaint).

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 22, and DENY without prejudice Plaintiff's Motion for Leave to File a Second Amended Complaint, ECF No. 30. The court will dismiss with prejudice Plaintiff's wrongful death, assault and battery, and IIED claims as well as her claims against MPD and Mayor Bowser in her official capacity. The court will dismiss without prejudice Plaintiff's remaining Section 1983 claims. A separate order will accompany this Memorandum Opinion.

Date:  March 10, 2026

_Tanya S. Chutkan_
TANYA S. CHUTKAN
United States District Judge